IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIO HINTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:22-cv-1494 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| ERIC ARMEL and | ) | |
| PA. BOARD OF PAROLE AND | ) | |
| PARDONS, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 1) filed by state prisoner Victorio Hinton ("Petitioner"). He challenges the decision of the Pennsylvania Parole Board[2] (the "Board") denying him parole and the calculation of his maximum sentence date. For the reasons set forth below, the Court will deny the Petition and deny a certificate of appealability.

**I.      Background**

In 1996, the Court of Common Pleas of Allegheny County sentenced Petitioner to a term of 8 ½ to 20 years of incarceration[3] on a conviction of third-degree murder. Petitioner's original maximum sentence date was September 22, 2015. (Resp's Ex. 1, ECF 12-1 at p. 6.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] In the Petition's caption, Petitioner erroneously referred to the Pennsylvania Parole Board as the "PA. Board of Parole and Pardons."

[3] Pennsylvania's statutory sentencing scheme is indeterminate, meaning that a court will impose a sentence with two numbers, which represent the minimum and maximum period of incarceration. The minimum term is the earliest date that the defendant will be eligible for discretionary parole release and the maximum term is the date on which the defendant may be released from confinement or parole supervision.

The Board released Petitioner on parole in June 2005. He was later recommitted as a technical parole violator. The Board released him on parole again in January 2008. At this time, Petitioner's maximum sentence date was still September 22, 2015. (Resp's Ex. 3, ECF 12-1 at p. 12; Resp's Ex. 4, ECF 12-1 at p. 15.)

While on parole, Petitioner was arrested and charged in state court with a firearm offense. He was convicted of that offense and on October 29, 2009, the state trial court sentenced him to a term of 4 to 8 years of incarceration, with time-served credit of 390 days. (Resp's Ex. 5, ECF 12-1 at p. 17.)

For the Board's purposes, Petitioner's status was now that of a convicted parole violator. Thus, in March 2010 the Board issued a Notice of Decision recommitting him as a convicted parole violator to serve 48 months of back time on his third-degree murder sentence. (Resp's Ex. 7, ECF 12-1 at p. 21.)

When Petitioner was in jail awaiting the outcome of the 2009 firearms case, he was charged in state court in a separate case with committing the offense of conspiracy to manufacture with intent to deliver. Petitioner was convicted of that offense and the state trial court sentenced him to 3 to 6 years of incarceration, with time served credit of 327 days. The court ordered that this sentence run concurrent with the sentence he received in his 2009 firearms case. (Resp's Ex. 6, ECF 12-1 at p. 19.)

On July 26, 2010, after the trial court had issued its judgment of sentence in Petitioner's conspiracy case, the Board issued another Notice of Decision. It explained that it was recommitting Petitioner as a convicted parole violator to serve 24 months of back time due to his 2010 conspiracy conviction, to be served concurrent with the parole violator term it previously imposed following his 2009 firearms conviction. The Board advised Petitioner that because of his parole violations,

2

the expiration of his maximum sentence for his third-degree murder conviction (that is, his parole

violator sentence) was recomputed and set at July 26, 2018. (Resp's Ex. 8, ECF 12-1 at p. 23.)

A few months later, in September 2010, Petitioner was sentenced in yet another state

criminal case to a term of 12 to 24 months of imprisonment on an assault conviction. The state

trial court ordered that this sentence be served consecutive to any other sentence Petitioner was

then serving. (Resp's Ex. 9, ECF 12-1 at p. 25.)

According to Respondents, at this point Petitioner was serving his parole violator term,

which was set to expire on July 26, 2018. The judgments of sentences imposed in 2009 and 2010

on Petitioner's firearms, conspiracy and assault convictions, which amount to an aggregate 10-

year maximum sentence, were lodged as detainers. (Resp's Ex. 10, ECF 12-1 at p. 27.)

Many years later, in 2016, Petitioner filed three petitions for a writ of mandamus in the

Commonwealth Court of Pennsylvania's original jurisdiction in which he challenged the Board's

calculation of his parole violator maximum sentence date. (Resp's Ex. 14, ECF 12-1 at pp. 39-44;

Resp's Ex. 15, ECF 12-1 at pp. 42-49; Resp's Ex. 16, ECF 12-1 at pp. 52-62.) The Commonwealth

Court dismissed these mandamus petitions for lack of jurisdiction, explaining in each case that:

> [Petitioner's] action is properly brought in this court's appellate jurisdiction,[4]
> *McMahon v. Pa. Bd. of Prob. & Parole*, 470 A.2d 1337 (Pa 1983); *Bronson v. Pa.*
> *Bd. of Prob. & Parole*, 421 A.2d 1021 (Pa. 1980), and this court's original
> jurisdiction cannot be used to revive lapsed appeal rights, *Lizzi v. Unemployment*
> *Comp. Bd. of Review*, 353 A.2d 440 (Pa. 1976). Accordingly, the petition for review
> is dismissed for lack of original jurisdiction.

---

[4] As discussed above, in its July 26, 2010 Notice of Decision the Board informed Petitioner that it
had recalculated his parole violator maximum sentence date to be July 26, 2018. (Resp's Ex. 8,
ECF 12-1 at p. 23.) If Petitioner wanted to challenge the Board's recalculation he had to: (1) file
an administrative appeal within 30 days from the date the Board mailed to him its July 26, 2010
Notice, 37 Pa. Code § 73.1; (2) then, if that appeal did not succeed, file an appeal with the
Commonwealth Court in its appellate jurisdiction, 42 Pa. Cons. Stat. § 763(a); and (3) then, if that
failed, seek an allowance of appeal with the Pennsylvania Supreme Court. Pa.R.A.P. 1114;
*Williams v. Wynder*, 232 F. App'x 177, 179-80 (3d Cir. 2007). Petitioner did not undertake these
steps.

(Resp's Ex. 14, ECF 12-1 at p. 39; Resp's Ex. 15, ECF 12-1 at p. 54; Resp's Ex. 16, ECF 12-1 at p. 71.)

According to Respondents, after Petitioner's parole violator maximum sentence date expired in July 2018, he began to serve the 10-year aggregate sentence imposed on his 2009 and 2010 firearms, conspiracy and assault convictions. In August 2018, the Pennsylvania Department of Corrections ("DOC") calculated his maximum sentence date for this aggregate sentence to be July 2, 2027. (Resp's Ex. 18, ECF 12-1 at pp. 75-78.)

In January 2019, Petitioner filed a petition for a writ of mandamus against DOC officials in the Pennsylvania Supreme Court. (Resp's Ex. 19, ECF 12-1 at pp. 84-104.) He challenged the DOC's calculation of his maximum sentence date and argued that he had completed service of all sentences in October 2016. He argued that the court should compel the DOC officials to recompute his maximum sentence date and release him from custody. (*Id.* at p. 85.)

In its answer opposing this mandamus petition, the DOC officials asserted that Petitioner was not being held beyond his maximum sentence date. They pointed out that under 61 Pa. Cons. Stat. § 6138, Petitioner first had to complete service of his parole violator sentence (which expired on July 26, 2018) and then serve the aggregate 10-year sentence imposed on his 2009 and 2010 on his firearms, conspiracy and assault convictions. (*Id.* at 105-08.) The DOC explained:

> [In 2010, the Board] revoked Petitioner's parole to serve at least 4 years back time and recalculated [P]etitioner's maximum sentence date to be July 26, 2018. From February 23, 2010 to July 26, 2018, Petitioner served the balance of his original 8 ½ to 20 year sentence. From July 26, 2018 to July 2, 2027, Petitioner must serve his 5 to 10 years sentence [imposed on his 2009 and 2010 on his firearms, conspiracy and assault convictions]. The pre-sentence credit ordered was factored into the maximum sentence date of July 2, 2027. [P]er the statute, Petitioner's newer sentence did not being to run until he served his prior [parole violator sentence].

(*Id.* at p. 107.)

On April 17, 2019, the Pennsylvania Supreme Court issued an order in which it summarily denied Petitioner's request for relief.[5] (*Id.* at p. 112.)

On March 11, 2022, the Board issued a Notice of Decision denying Petitioner parole. (Resp's Ex. 22, ECF 12-1 at p. 137.) The Board explained that it reached this decision following an interview of Petitioner and after considering the relevant factors, including his "risk and needs assessment indicating [his] level of risk to the community" and his "prior unsatisfactory parole supervision history." (*Id.*)

A few months later, in May 2022, the DOC adjusted Petitioner's controlling maximum sentence slightly to reflect that it would expire around four months earlier. Petitioner's maximum sentence date is now March 8, 2027. (Resp's Ex. 23, ECF 12-1 at pp. 139-42.)

In October 2022, Petitioner filed with this Court the pending Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF 1; *see also* Memorandum in Support, ECF 2.) He brings two claims for relief. First, Petitioner claims that the Board's March 11, 2022, decision denying him parole was arbitrary and capricious in violation of his substantive due process rights. Second, Petitioner challenges the calculation of his maximum sentence date. He claims that he served the full term for all sentences on July 27, 2020 and therefore is being incarcerated beyond his maximum sentence date in violation of the Eight Amendment's prohibition against cruel and unusual punishment.

---

[5] In December 2021, Petitioner filed another petition for a writ of mandamus with the Commonwealth Court. (Resp's Ex. 21, ECF 12-1 at pp. 122-35.) Petitioner states that in this mandamus action he was "merely [seeking] to be credited for the time awarded to him by the judge." (ECF 15 at p. 6.) He further states that this mandamus action has "no bearing [on] the matters" at issue in his habeas case. (*Id.*) Petitioner withdrew this mandamus action in December 2023.

Respondents have filed the Answer and relevant records. (ECF 12.) Petitioner then filed the Reply (ECF 15) and additional records he wants the Court to consider in evaluating his claims. (ECF 16-19.)

## II.      Discussion

### A.      Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, which is the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner the writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *Id.*; *see, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B.      Exhaustion and Procedural Default

State prisoners typically must "exhaust their claims in state court before seeking relief in federal courts." *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires employing a full round of the state's appellate process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan*, 526 U.S. at 845.

The related doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize it, the procedural default doctrine provides that a Pennsylvania state prisoner defaults a federal habeas claim if he: (1) failed to present a claim to the state court and cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as the state's waiver or limitations rules) bar such consideration; or (2) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the state court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner can avoid the default of a claim if he shows "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).[6]

---

[6] A petitioner can also overcome the default of a claim by showing that the federal habeas court's failure to consider it would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. This is commonly referred to as an "actual innocence gateway claim," because it requires a petitioner to produce evidence that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see, e.g.*, *Reeves v. Fayette, SCI*, 897 F.3d 154, 157 (3d Cir. 2018). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[,]" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316). This case is not one of those rare cases in which the actual-innocence gateway would apply.

### C.    Claim Challenging the Board's Decision Denying Parole

In his first claim, Petitioner asserts that the Board's March 11, 2022 decision denying him parole was arbitrary and capricious in violation of his substantive due process rights. Respondents contend that Petitioner procedurally defaulted this claim because he could have raised it in a petition for a writ of mandamus in the Commonwealth Court but failed to do so. Petitioner counters that he is excused from the exhaustion requirement under *DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005). In *DeFoy*, the Court of Appeals was examining the state of Pennsylvania law *at the time it issued its decision in 2005* to determine if the petitioner in its case, who claimed the Board violated his Fifth Amendment right against coerced self-incrimination, had an available state court remedy in which to exhaust his claim. The Court of Appeals held that, aside from litigating an *ex post facto* claim, Pennsylvania law did not provide a mechanism by which a prisoner could challenge a parole denial. *Id.* at 445. Thus, it held that a Pennsylvania prisoner who is challenging the denial of parole is exempt from the exhaustion requirement with respect to all other types of constitutional claims. *Id.*

The Respondents have established that the holding in *DeFoy* does not apply to this case, however. That is because the law in Pennsylvania has changed in the two decades since *DeFoy* was decided in January 2005. By 2022, when Petitioner defaulted the substantive due process claim at issue in this case, the Commonwealth Court had made clear that a prisoner could raise due process challenges in a mandamus action challenging the Board's decision denying parole. *Toland v. Pennsylvania Bd. of Prob. & Parole*, 263 A.3d 1220, 1233 (Pa. Commw. Ct. 2021) ("under our precedent, both ex post facto claims *and due process challenges* may be raised in a mandamus action.") (emphasis added); *see, e.g.*, *Bowman v. Brittan*, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon *Toland*, which *DeFoy* could not consider since it had yet

been decided, it is clear that Petitioner had an available state court remedy; hence, he was required to comply with the exhaustion requirement."), report and recommendation adopted sub nom. *Bowman v. Att'y Gen.*, 2024 WL 5047464 (E.D. Pa. Dec. 9, 2024); *Bradley v. Wingard*, 2017 WL 11476608, at \*2 (W.D. Pa. Oct. 12, 2017) ("Review [in state court] is obtained by the disappointed inmate filing a petition for a writ of mandamus and the Board responding with a demurrer…. [A]lthough the burden on the inmate is a high one and the discretionary aspects of a parole decision cannot be reviewed, *Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001), the Commonwealth Court does consider constitutional claims on their merits."), report and recommendation adopted, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018).

Thus, Respondents have established that Petitioner had a firmly established state court remedy available to him to challenging the Board's March 11, 2022 decision on substantive due process grounds. He could have filed a mandamus petition in the Commonwealth Court's original jurisdiction. Because Petitioner did not do so, he procedurally defaulted the claim. There are no grounds to excuse his default. Therefore, the Court will deny the claim because it is procedurally defaulted.

Alternatively, Petitioner's substantive due process claim also fails on the meris. He has no right to parole under state law. *See, e.g.*, *Hudson v. Pennsylvania Bd. of Prob. and Parole*, 204 A.3d 392, 395 (Pa. 2019). Whether to grant him parole is a decision left to the sole discretion of the Board. 61 Pa. Cons. Stat. §§ 6135, 6137; *see, e.g.*, *Homa v. Pennsylvania Bd. of Prob. and Parole*, 192 A.3d 329, 334 (Pa. Commw. Ct. 2018). Nevertheless, the Fourteenth Amendment's Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal quotation and citations omitted); *see also*

*Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) ("Even if a state statute does not give rise to a liberty interest in parole release…, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.").

"Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." *Id.* (internal quotations and citations omitted); *see also Hunterson v. DiSabato*, 308 F.3d 236, 248 (3d Cir. 2002) ("when an executive action is at issue, only the most egregious conduct will be considered arbitrary in the constitutional sense."). "As a general matter, it is governmental conduct intended to injure that is most likely to rise to the conscience-shocking level." *Evans v. Sec'y Pennsylvania Dept. of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (internal citations and quotations omitted).

The Court of Appeals has explained that it would be arbitrary and capricious for the Board to base its decision on a reason that has no "rational relationship to the purpose of parole[,]" such as the "color of one's eyes, the school one attended, or the style of one's clothing." *Block*, 631 F.2d at 236 n.2. It has further held that it "would violate due process if [a parole board] bases a decision on constitutionally impermissible criteria such as race, religion, or the exercise of free speech rights." *Id.* at 237; *see also Newman*, 617 F.3d at 784.

Petitioner has not met his burden of proving that the Board's decision denying him parole was arbitrary and capricious. In exercising its discretion whether to grant him parole, the Board had to consider a number of factors, including Petitioner's general character and background. 61 Pa. Cons. Stat. § 6135(a). It determined that it would deny him parole after he was interviewed and particularly because of his repeated illegal conduct while previously on parole and its conclusion that he would pose a risk to the community if paroled. Although Petitioner disagrees

10

with the Board's assessment of him, he has not shown that the Board relied on anything that can be described as "conscience shocking." The Court is not evaluating whether the Board made the correct decision, and it is "not authorized to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001). Accordingly, there can be no finding that Petitioner is in custody in violation of his substantive due process rights.

Based on the above, the Court will deny Petitioner's claim challenging the Board's decision denying him parole because he procedurally defaulted the claim and, alternatively, because it fails on the merits.

### D.    Challenge to Petitioner's Maximum Sentence Date

Petitioner claims that he is being held beyond what should be his maximum sentence date. This claim is based on his assertion that the Board "constructively paroled" him from his parole violator sentence on July 26, 2010. That is the date the Board issued the Notice of Decision following his 2010 conspiracy conviction and informed him that it had recomputed his parole violator maximum sentence date to be July 26, 2018. (Resp's Ex. 8, ECF 12-1 at p. 23.) That is also the date Petitioner claims he received the Board's original "Order to Recommit," which he contends reflected that he was "constructively paroled" from his parole violator sentence as of that date. (ECF 2 at p. 10; Pet's Ex 10, ECF 2-12 at p. 1.) Petitioner claims that since he was allegedly "constructive paroled" on July 26, 2010, he began serving his ten-year aggregate sentence for his 2009 and 2010 convictions on that date. Accordingly, he argues, that sentence expired ten years later, on July 27, 2020, and therefore he should have been released on that date.

Respondents assert that the Court must deny this claim because Petitioner filed it outside of AEDPA's one-year statute of limitations, which is codified at 28 U.S.C. § 2244(d).[7][8] In relevant part, AEDPA requires that a state prisoner raise his federal habeas claims within one year from "the date on which the factual predicate of the claim…could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). District courts that have considered similar sentence calculation claims have held that the statute of limitations for such claims beings to run *at the very latest* on the date the petitioner believes he should have been released from imprisonment.[9] *See, e.g.*, *Lutz v. Sup't of SCI Coal Twp.*, 2014 WL 298826, at *3 (M.D. Pa. Jan. 27, 2014).

As discussed above, Petitioner contends that his maximum sentence date expired on July 27, 2020. (ECF 1 at p. 7; ECF 15 at p. 17.) Thus, he had one year from that date—that is, until July 27, 2021—to file a timely habeas claim contending that he was being held beyond his maximum sentence date. Petitioner did not file his petition with this Court until around October 11, 2022 (the date he asserts he placed the Petition in the prison mail). Thus, his Eighth Amendment claim is untimely by at least 622 days.

AEDPA provides that its limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). AEDPA's limitations period also "is subject to equitable

---

[7] The date on which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004).

[8] Respondents also assert that Petitioner defaulted this claim and that it lacks merit. The Court's disposition on timeliness makes it unnecessary to reach these additional issues.

[9] The one-year statute of limitations for this claim likely commenced prior to July 27, 2020, since Petitioner knew well before that date how his maximum sentence was being calculated.

tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. Petitioner does not argue that he is entitled to either statutory or equitable tolling, nor has he directed the Court to anything in the record to support a determination that tolling of the statute of limitations would be appropriate here.

Based on the above, Petitioner's Eighth Amendment claim that he is being held beyond his maximum sentence date is timebarred and is denied for that reason.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's claims.

**IV.  Conclusion**

The Court will deny the Petition and will deny a certificate of appealability.

An appropriate Order follows.

Date:  January 24, 2025                    /s/ Patricia L. Dodge
                                           PATRICIA L. DODGE
                                           United States Magistrate Judge